WILLIAM C. DOHERTY *vs.* INHABITANTS OF AYER.

Middlesex.    November 20, 1907. — February 24, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Way,* Public, Defect in highway. *Automobile. Statute. Evidence,* Presumptions and burden of proof. *Words,* "Carriages."

The " carriages " referred to in R. L. c. 51, § 1, requiring cities and towns to keep public ways reasonably safe at all seasons for travellers " with their horses, teams and carriages," are those drawn by animal power.

An automobile is not a " carriage" within the terms of R. L. c. 51, § 1, requiring cities and towns to keep public ways reasonably safe and convenient at all seasons for travellers " with their horses, teams and carriages."

Cities and towns are bound to keep their ways reasonably safe and convenient for travel generally, including that properly undertaken in automobiles; but, if their ways are reasonably safe and convenient for travel generally, they are

not liable for damage resulting from a failure to make special provisions which are required only for the safety and convenience of persons using automobiles.

At the trial of an action of tort against a town under R. L. c. 51, § 18, for damage to the plaintiff's automobile alleged to have been caused by a defect in the highway, it appeared that a street railway company in the process of laying its tracks had uncovered a level stretch of sand throughout the entire width of the way and extending for thirty feet to one side of the location of the way, and had obliterated the marks of travel, but allowed travel upon the way. The plaintiff's automobile was injured through becoming stuck in the sand, but there was conflicting evidence as to whether the accident happened within the travelled part, or entirely outside of the location of the way. The presiding judge instructed the jury that " it was not of any great importance whether the accident happened without the limits of the road, provided, in the opinion of the jury, the sand was a dangerous place, because the town would be obliged to properly protect travellers by barriers or otherwise against such a danger even if it were outside the limits of the highway." *Held*, that the instruction was erroneous, since there was no evidence of such a dangerous condition as to call for the erection of a barrier to keep travellers from passing out of the road ; and that therefore the jury should have been instructed that, if the accident happened outside of the limits of the way, the defendant was not liable.

At the trial of an action of tort against a town under R. L. c. 51, § 18, for damage to the plaintiff's automobile alleged to have been caused by a defect in a highway, it appeared that the plaintiff was travelling upon the way in an automobile, but there was no evidence introduced either by the plaintiff or by the defendant that he was licensed to operate an automobile or that the automobile was registered as required by Sts. 1903, c. 473; 1905, c. 311. *Held*, that, while, if it had appeared affirmatively that the plaintiff was travelling on the highway without either the registration of or the license to operate the automobile which were required by the statutes, he would have been without remedy, in this case, there being no proof of such violation of law by him, he was to be presumed to have been innocent thereof and to have been using the way lawfully.

TORT under R. L. c. 51, § 18, for damage to the plaintiff's automobile alleged to have been caused by a defect in Sandy Point Road in the defendant town, which the defendant was bound to keep in repair. Writ in the Superior Court for the county of Middlesex dated June 23, 1906.

There was a trial before *Stevens*, J. The facts in evidence are stated in the opinion.

No evidence was introduced by the plaintiff or defendant showing whether or not the plaintiff was licensed to operate an automobile upon the public highways, or whether his automobile was registered, according to the requirements of Sts. 1903, c. 473 ; 1905, c. 311.

At the close of the evidence, the defendant requested the presiding judge to rule that on all the evidence the plaintiff was not entitled to recover ; that there was no evidence which

would warrant the jury in finding that the way was defective; that, "if the defect in the way was one which would not be dangerous to ordinary vehicles, the plaintiff could not recover, even though the jury found it was a defect which was dangerous to the plaintiff's automobile"; and that, "if the jury found that the road was reasonably safe for travel of the ordinary kinds they would not be warranted in finding it defective merely because it was not fit for the use of automobiles." When making of these requests, for the first time, the defendant called the attention of the presiding judge to the lack of evidence of registration of the automobile or license of the plaintiff to operate it.

The requests were refused, and in his charge the presiding judge gave the instructions set forth in the opinion, and the defendant excepted.

*J. M. Maloney*, for the defendant.

*W. A. Hogan*, for the plaintiff.

KNOWLTON, C. J. This action was brought to recover for damage to the plaintiff's automobile, alleged to have been caused by a defect in a highway which the defendant was bound to keep in repair. The road at the place of the accident was being reconstructed by the Lowell and Fitchburg Street Railway Company, which was preparing to lay a track on a location partly within the highway on its southerly side and partly on private land outside of it. There was a fence on the north side of the road, but no fence or wall on the southerly side. The old travelled way, before the work of reconstruction began, was from sixteen to twenty feet wide. Between the travelled way and the fence on the north side there was a grass-covered space between three and four feet wide. On the south side there was a grass-covered space between three and four feet wide, and then the ground sloped upward, and was covered with a growth of birches and other trees. In preparing the place for the railway, the grade of the highway and for a space from twenty to thirty feet south of it, was cut down a distance of between twenty-four and forty-two inches, leaving a surface of sand three hundred or four hundred feet in length through the entire width of the road, and for a distance of twenty or thirty feet south of the road. The road was in constant use, and the

workmen upon it had orders to assist heavy teams if necessary, and sometimes they did so. The road was always left level, with no holes.

The plaintiff was familiar with the road and knew that work was going on there. He went over it with his automobile, on his way from Lowell to Ayer, early in the afternoon. On his return in the evening his machine ran upon the sand about twenty feet and then stopped. The road was level, and the only imperfection in it was its sandy condition. He made two unsuccessful attempts to get the machine out of the sand, but the wheels had sunk to a depth of eight to ten inches. He then got a horse, and with the help of laborers who shovelled sand from in front of the wheels, and with the use of his engine, and the pulling of the horse and the men, he got the machine out of the sandy place. In doing this he broke the automobile. The evidence was conflicting as to whether the place of the accident was within the travelled part of the old highway or entirely outside of the location of the way. The jury in returning their verdict answered " Yes " to the question, " Was the place of the accident reasonably safe for the travel of carriages other than automobiles ? " The judge instructed the jury that an automobile was a carriage, within the meaning of the R. L. c. 51, § 1, and that it was the duty of the defendant, under that statute, to keep its roads reasonably safe and convenient for automobiles, so that they might be protected. To this instruction the defendant excepted.

The question presented by this exception has never been decided by this court. It was raised in *Baker* v. *Fall River*, 187 Mass. 53, but it was immaterial to the decision, and the court refrained from considering it. The opinion contains this language : " Therefore we now have no occasion to consider whether roads must be kept in such a state of repair and smoothness that an automobile can go over them with assured safety." The dictum in *Richardson* v. *Danvers*, 176 Mass. 413, 414, referred to in the opinion in *Baker* v. *Fall River*, was made without any thought of such a question as is now before us. This appears from the earlier statement in the same case, which is made the foundation of the decision that a bicycle is not a carriage within the meaning of the statute. Referring to the statute, which was first enacted in St. 1786, c. 81, § 1, and re-enacted in the Rev.

Sts. c. 25, § 1, Gen. Sts. c. 44, § 1, and Pub. Sts. c. 52, § 1, Mr. Justice Lathrop said, " Although, of course, it is not to be confined to the same kind of vehicles then in use, we are of opinion that it should be confined to vehicles *ejusdem generis*, and that it does not extend to bicycles." It hardly can be contended that locomotive cars of many tons' weight, propelled by a gasoline engine or a steam or electrical engine with complicated machinery, capable of developing fifty or seventy-five horse power, and sometimes even more, are vehicles *ejusdem generis* as the carriages known to the legislators of Massachusetts in 1786. It was shown in the opinion from which we have just quoted that, under many statutes, a bicycle is held to be a carriage. It is a vehicle that is used in carrying one or more persons. But it was also said that " it is more properly a machine than a carriage." This is equally true of an automobile. It is a carriage in a broad sense of the word. But its features as a piece of machinery are far more striking than those which it possesses as a carriage. It is commonly spoken of as a machine. In the bill of exceptions before us the plaintiff's vehicle is repeatedly called a machine. Cars on steam railroads in England are called carriages, and some railroad cars are referred to in this country as coaches; but these are not such carriages as were intended by the framers of this statute. When towns were first required by law to keep their highways and town ways " reasonably safe and convenient for travellers, with their horses, teams and carriages at all seasons of the year," there was no thought of putting upon them such a burden as would be imposed if they were compelled to keep all of these ways in such a condition that automobiles could pass over them safely and conveniently at all seasons. Horses, teams and carriages are grouped together in the statute, and the carriages referred to are those drawn by animal power.

There are many highways and town ways that run into remote places and are but little travelled. In some parts of the State that are very sparsely settled there are vast stretches of sandy surface, traversed by roads that are but little used, where the small wheels of a heavy automobile might sometimes encounter as great an obstacle to progress as the plaintiff's vehicle encountered on the smooth, level sand at the place of this accident. To be obliged to harden all such roads would be a burden upon

towns heavier than could be borne. There are steep mountain roads laid out for the use of but a small part of the public, where, in a heavy rain, water flows down with much force. This must be turned off from the travelled part of the road by high and sharp water bars. It would be unreasonable to require all such roads to be made convenient for travel with automobiles at all seasons. There are also roads that are frozen to a great depth in winter, which sometimes present a surface of very deep, soft mud while the ground is thawing in the spring. No reasonable expenditure by towns would be enough to make all such roads convenient for the use of heavy automobiles, with their small wheels, at all seasons. Another difficulty sometimes appears upon such roads when they are suddenly frozen, after having been rutted in a time of deep mud. Such roads could not be made safe and convenient for use by automobiles at such times without entire reconstruction.

An automobile is not a carriage within the meaning of that word in the R. L. c. 51, § 1. Persons may lawfully ride in automobiles, as they may lawfully ride on bicycles, and cities and towns are bound to keep their ways reasonably safe and convenient for travel generally, including that properly undertaken upon such vehicles. *Gregory* v. *Adams,* 14 Gray, 242, 248. But if their ways are reasonably safe and convenient for travel generally, they are not liable for a failure to make special provisions, required only for the safety and convenience of persons using automobiles or bicycles. The law applicable to the present case is that stated in *Baker* v. *Fall River,* 187 Mass. 53, *Richardson* v. *Danvers,* 176 Mass. 413, *Rust* v. *Essex,* 182 Mass. 313, and *Spring* v. *Williamstown,* 186 Mass. 479.

. There was error in the instruction that, the cutting down of the grade having obliterated the marks of travel, it was not of any great importance whether the accident " happened without the limits of the old road as above described, provided, in the opinion of the jury, the sand was a dangerous place, because the town would be obliged to properly protect travellers, by barriers or otherwise, against such a danger, even if it were outside the limits of the way." The jury should have been instructed that, if the accident happened outside of the limits of the way, the town was not liable for it, as there was no obligation to keep in

repair land outside of the boundaries of the way, and that there was no such dangerous condition there as called for the erection of a barrier to keep travellers from passing out of the road. In *Damon* v. *Boston*, 149 Mass. 147, 151, Mr. Justice Allen said, " the danger which requires a railing must be of an unusual character, such as bridges, declivities, excavations, steep banks, or deep water. Spaces adjoining roads, streets and sidewalks, and unsuitable for travel, are often left open in both country and city and a town or city is not bound to fence against them unless their condition is such as to expose travellers to unusual hazard." The same doctrine is also applied and strongly stated in *Adams* v. *Natick*, 13 Allen, 429, 431, and *Marshall* v. *Ipswich*, 110 Mass. 522. See also *Stockwell* v. *Fitchburg*, 110 Mass. 305, *Stone* v. *Attleborough*, 140 Mass. 328, and *Macomber* v. *Taunton*, 100 Mass. 255.

The defendant's contention that the plaintiff could not recover for want of proof that he was licensed to operate an automobile upon the public highways and that his automobile was registered according to the requirements of the St. 1903, c. 473, as amended by the St. 1905, c. 311, is not well founded. If it appeared affirmatively that he was travelling without a proper registration of the vehicle, or without a license to operate it, it might well be held that he was not a traveller on the highway in a legal sense, and that the town owed him no duty under the statute. He would be within the principles stated in *Richards* v. *Enfield*, 13 Gray, 344, *Higgins* v. *Boston*, 148 Mass. 484, *Blodgett* v. *Boston*, 8 Allen, 237, and *Tighe* v. *Lowell*, 119 Mass. 472. Section 5 of the St. 1903, c. 473, declares that, " except as hereinafter provided, no person shall, on or after the first day of September in the year 1903, operate an automobile or motor cycle upon any public highway or private way laid out under authority of statute, unless licensed so to do under the provisions of this act." In § 3 there is a similar provision in regard to the operation of an automobile unless it is registered. Penalties are prescribed for a violation of these provisions.

Inasmuch as the plaintiff was upon the road only as one riding in and operating an automobile, if it was unregistered and if he was unlicensed, he had no relation to the highway and he was in no sense a traveller except as a violator of the law in reference

to the use that might be made of the way. In regard to the right of recovery, his violation of this law would not be treated as mere evidence of negligence that was not a direct and proximate cause of the accident, or as only a condition which was not fatal to his claims. See *Newcomb* v. *Boston Protective Department*, 146 Mass. 596; *Steele* v. *Burkhardt*, 104 Mass. 59; *Spofford* v. *Harlow*, 3 Allen, 176; *Kidder* v. *Dunstable*, 11 Gray, 342. Without determining whether the court would now follow the decision of the majority of the justices in *Smith* v. *Boston & Maine Railroad*, 120 Mass. 490, and the doctrine stated in some of the cases therein cited, we are of opinion that a violation of the statute in this particular so affects the direct relation of the violator to the town, in regard to the way and the only use that he was making of it, as to leave him without remedy for an injury caused by a defect in the way.

So far as appears the automobile was duly registered and the plaintiff was duly licensed. The evidence tends to show that the plaintiff was a traveller lawfully using the way. Presumptions both of law and fact are always in favor of innocence. In cases somewhat analogous, when one would avoid liability on the ground of a violation of law by the plaintiff, he must prove the violation. *Goddard* v. *Rawson*, 130 Mass. 97, and cases there cited. See also *Temple* v. *Phelps*, 193 Mass. 297.

In the present case the evidence introduced by the plaintiff made a *prima facie* case in his favor on this point.

*Exceptions sustained.*