## WHEELER v. CITY OF FLATONIA.

(Court of Civil Appeals of Texas. Galveston. March 13, 1913.)

1. MUNICIPAL CORPORATIONS (§ 822*) — STREETS — ACTIONS FOR DEFECTS — INSTRUCTIONS.

In an action for personal injuries and injuries to plaintiff's automobile caused by the automobile striking a stump in a street, an instruction that the fact that plaintiff was running his automobile without lights would in itself preclude a recovery was erroneous, even if there was evidence that this was the proximate cause of the accident.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1758–1762; Dec. Dig. § 822.*]

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 59 Hun, 617.

2. APPEAL AND ERROR · (§ 1068*)—HARMLESS ERROR—INSTRUCTIONS.

A judgment will not be reversed for errors in the charge, if upon the undisputed facts and upon the view of the evidence most favorable for appellant no other judgment than the one appealed from could properly have been rendered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228, 4230; Dec. Dig. § 1068.*]

3. MUNICIPAL CORPORATIONS (§ 777*) — STREETS—OBSTRUCTIONS—LIABILITY.

Plaintiff sustained personal injuries and injuries to his automobile by the automobile striking a stump in a side street which, as compared with other streets, was used very little, and where very few persons lived. The street was on smooth level ground, and had never been fixed up or graded. By ordinance 10 feet was set apart for pedestrians, and the stump stood on the line of this theoretical sidewalk; there being no actual sidewalk. The traveled way of the street was in good repair, free from obstructions and sufficiently wide for all purposes, but plaintiff left the traveled way for his own convenience to get closer to a house where he intended to stop. When the street was muddy, persons were in the habit of driving between the stump and the property line without interference, but it did not appear that they were invited to do so by the city authorities, nor that the street was muddy at the time. Although a city in name, the place was really a small town; the total revenue of which was less than $2,000. Held, that the city performed its duty by furnishing a sufficient traveled way, and was not liable for its failure to remove the obstruction.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1631; Dec. Dig. § 777.*]

4. MUNICIPAL CORPORATIONS (§ 777*) — STREETS—SIDEWALKS.

A driver on a city street was bound to take notice of an ordinance setting apart 10 feet as a sidewalk, although no sidewalks were actually constructed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1631; Dec. Dig. § 777.*]

Appeal from Fayette County Court; George Willrich, Judge.

Action by R. A. Wheeler against the City of Flatonia. Judgment for defendant, and plaintiff appeals. Affirmed.

John T. Duncan, of La Grange, for appellant. L. D. Brown, of La Grange, for appellee.

REESE, J. This is a suit instituted by R. A. Wheeler against the city of Flatonia in the county court to recover damages for personal injuries to himself and his wife, and also to the automobile in which they were riding, alleged to have been occasioned by the automobile striking a stump in the street of the town. Damages are laid at $800, and it is alleged that the stump constituted a dangerous obstruction to travel, and that the defendant was negligent in allowing it to remain in the street. A trial with the assistance of a jury resulted in a verdict and judgment for defendant. Plaintiff made a motion for a new trial, which was refused, and he appeals.

The assignments of error complain of the giving and refusing of charges and the admission and exclusion of evidence.

None of the assignments of error complaining of the action of the court in the admission or exclusion of evidence presents material error. Some portion of the charge of the court and some of the charges given at the request of appellee should not have been given. We call attention particularly to the charge referred to in the ninth assignment of error. There was no evidence that at the time appellant ran against the stump it was so dark he could not see it. The charge complained of in the thirteenth assignment of error was unnecessary, and should not have been given, though none of the objections made to it by appellant under this assignment are tenable, and the statement from the evidence accompanying the proposition has no application to the matter referred to in the assignment.

[1] The charge referred to in the twentieth assignment should not have been given. There was no evidence that would authorize the inference that, even if appellant was running his automobile without lights, this fact was the proximate cause of the accident, or had anything to do with it, and, besides, it was error for the court to charge the jury as was done in this charge that this naked fact would preclude a recovery by appellant whether it was or not a proximate cause of the injury.

[2] But do these errors require a reversal of the judgment? We quote here the late rule adopted by the Supreme Court: "No judgment should be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court; and if it appear to the court that the error affects a part only of the matter in controversy, and the issues are severable, the judgment shall only be reversed and a new trial ordered as to that part affected by such error. Provided, if the erroneous action of failure or refusal of the trial judge to act shall prevent the proper presentation of a cause to the Court of Civil Appeals, and be such as may be corrected by the judge of the trial court, then the judgment shall not be reversed for such error, but the appellate court shall direct the said judge to correct the error, and thereafter the Court of Civil Appeals shall proceed as if such erroneous action or failure to act had not occurred." Independently of this rule, it has always been the practice in appellate courts in this state, as we understand it, not to reverse the judgment for errors in the charge if upon the undisputed facts; and, upon the most favorable view of the evidence for appellant, no other judgment than the one appealed from could have been properly rendered.

[3] Both under this long prevailing rule and under that lately adopted by the Supreme Court we think this judgment should stand. The practically undisputed evidence establishes the following facts: The city of Flatonia is a city only in name; is really a small town. Its total revenues for all purposes are less than $2,000. It is incorporated under the provisions of the general laws for the incorporation of towns and cities. On the evening of July 15, 1911, after sundown and about dusk, but at a time when persons and objects could be plainly distinquished at a distance of 100 yards or more, appellant Wheeler, with his wife and a colored woman, who was his washerwoman, drove in his automobile, a large machine weighing over 2,000 pounds, down a street in the town of Flatonia to this washerwoman's home for the purpose of getting the family washing of clothes. Arriving opposite this washerwoman's house, appellant drove his automobile outside of the regularly traveled way of the street, and in doing so the axle of his machine struck a stump with sufficient force and violence to cause some damage to the machine and some injuries to appellant and his wife. The street in question, while it was generally used for travel, was a side street extending down into a portion of the town very sparsely populated, and in comparison with other streets in the business portion and more thickly settled residence portions of the town was not very much used. It had never been fixed up or graded as a city street. It did not need to be, as it was upon smooth, level ground. It was 60 or 80 feet wide. At the place where this accident occurred there were very few persons living on this street. The persons living on it with two exceptions were negroes, and the neighborhood had acquired the euphonious name of "Happy Hollow." By the ordinances of the city in the residence portions the sidewalks were required to be of the width of 10 feet, and ordinances were passed to prohibit the use of sidewalks by bicycle riders and persons using teams and vehicles, not including, however, automobiles by name, of which there were in use in the town, at the time of the accident, about half a dozen. At the particular place where this accident occurred the sidewalk existed only in theory, as there was nothing to distinguish where the sidewalk ended and the street proper began, and it was shown that sometimes, when the street proper at this point was muddy, persons in vehicles were in the habit of driving on the sidewalk and between the stump in question and the fence in front of this washerwoman's house, and this was tacitly allowed, or at least no steps

were taken to prohibit it. The stump in question stood right across the line of the theoretical sidewalk or space set apart by the ordinance for the use of pedestrians. It was 9 feet, 6 inches, from the inside of the stump to the fence, 11 feet, one inch, to the outside. Appellant's machine straddled the stump, or attempted to do so, which threw one of the fore wheels on the sidewalk or between the stump and the fence. The traveled, way of the street was in good repair, entirely free of obstacles, and amply sufficient in width for all purposes of travel by persons using the street, being about 40 feet in width. There was no occasion for appellant to leave this traveled part of the way used by persons who had occasion to travel along the street, except for his own convenience in getting up to the washerwoman's house. The gate to the yard fence was 13 feet from the stump. This stump was 19 inches high, and it was shown that it was not a dangerous obstacle to the use of the street by other vehicles than automobiles, even if it had been further out into the street. Appellant did not see the stump before he struck it, and was not looking for obstructions of any kind. This stump had been at this place for more than two years prior to the accident. Its existence was well known to the city marshal, who took no measures to have it removed, because he did not consider it an obstruction to travel. It was his official duty to look out for obstructions in the streets, and to report them to the council.

Under the foregoing facts, we do not think the city authorities can be charged with negligence, as a basis for this action, in failing to have the stump removed. The city by the terms of the general law under which it was chartered had charge and control over its streets, and was charged with the duty to exercise reasonable care in keeping the same in repair and reasonably safe for travel. What is such reasonable or ordinary care varies with circumstances. Certainly it would be most unjust to require a small town, with such limited revenues as appellee enjoyed, to use the same care to keep its little used streets in a sparsely settled part of the town in good repair and free from obstructions as would be required of a city proper, with large revenues, with respect to streets over which, and every part of which, vehicles are constantly passing, and it would be a most onerous duty to impose upon such towns as appellee to require it to keep every part of all of its streets, whether used for travel or reasonably required for such use or not, in good repair for travel. It would entail an expense which such town could not bear, and most of it would be altogether unnecessary. This principle is well recognized by the authorities in those states where the courts have so much more frequently been called upon to decide such cases, as is here presented, than in this state,

and certainly there is no principle of law or of right that would require a more exacting rule of small towns, newly organized and thinly settled, in our state, than is imposed upon municipal authorities in old settled and thickly populated communities, whose villages are as large as our towns and whose towns are larger than some of our pretentious so-called cities. The authorities on this point will be found cited in the text-books from which we quote: "The general rule appears to be that the duty to keep in repair extends only to the 'traveled path' or portion of the way in actual use, provided it is wide enough to be safe." Elliott on Roads and Streets, p. 455. And, after stating the law that forbids the placing of obstructions by individuals in any part of the street or way, this author adds: "Those cases which hold that a city or county is not liable for obstructions or defects outside of the traveled path are not in conflict with this rule, because they rest upon an entirely different principle." Id. p. 479.

Referring to the statutes in the New England states, Judge Dillon remarks that it is probable that these statutes as construed impose in some respects a greater measure of liability than would elsewhere be held to exist by implication, and says: "Generally speaking, it may perhaps correctly be said that under these statutes a town or city charged with the duty of keeping its highways or streets in repair performs that duty when the traveled way is without obstructions or structural defects which endanger the safety of travelers, and is sufficiently level and smooth to enable persons by the exercise of ordinary care to travel with safety and convenience." 1 Dillon, Mun. Corp. (3d Ed.) § 1033. And further it is said: "It is not requisite that a highway in its whole width as located should be fitted for travel. It is sufficient if it be of suitable width and in good condition for the needs of the public." Id. §§ 1008–1011. Many authorities are cited by Elliott and Dillon in support of the text quoted. In 37 Cyc. p. 289, it is said that "an obstruction outside of the traveled part of the highway is not ordinarily a defect unless so near as to be dangerous to travelers," and in the note there is a very full citation of authorities. In Burr v. Town of Plymouth, 48 Conn. 460, the gist of the decision is thus stated in the syllabus: "The ordinary traveled track of a highway had been for a long time blocked by snow, and the public travel had worn a track by the side of the road along the ditch. The plaintiff took this side track with a heavy load and broke in through a crust of ice and snow that covered a wet place, and was injured. In a suit against the town, in which the defendants offered evidence to show that a path had been broken through the drift by the road contractor two days before the accident, making the ordinary track of the highway passable and safe, it was held that

it was not enough that the plaintiff thought it safer and better to take the side track, if the regular track was reasonably open and safe. A town cannot be liable for an error of judgment on the part of a traveler." In the opinion the law is thus stated: "Towns are not insurers of the absolute safety of travelers; they are only bound to provide reasonable and proper roads for the public travel, and are not obliged to keep the whole width of the highway free from obstructions and in good condition for being driven upon, and the jury ought to have been so instructed, and that if the usual traveled way was reasonably open and in a safe condition, and the accident happened because the plaintiff chose, or deemed it more judicious, to take the side path, which proved to be unsafe, the town was not liable." The text of the opinion indicates that the rule of duty and liability imposed by the statute was at least as exacting as that imposed by law upon appellee in this case. In the case of Carey v. Town of Hubbardston, 172 Mass. 106, 51 N. E. 521, plaintiff drove outside of the traveled part of the highway (keeping within the public street however), and was injured by coming in contact with a projecting stone. It was held that if she, without any necessity therefor, drove outside of that portion of the way prepared for travel, she took the chances of contact with obstructions. In Wolf v. District of Columbia, 21 App. D. C. 464, 69 L. R. A. 83, it was held that a horse block at the edge of the sidewalk is not an obstruction to the walk, so as to render the city liable for injuries caused by a traveler falling over it.

It is established beyond controversy in this case that the stump against which appellant drove his machine was at the edge of the sidewalk, that there was a plain traveled way in the street of ample width for the use of all kinds of vehicles and entirely safe and free from obstructions, and further that plaintiff drove out of this "traveled way" and on to the sidewalk for his own convenience.

[4] It does not matter, we think, that there was nothing to mark the line between the sidewalk and the street. By its public ordinances, of which every one is bound to take notice, 10 feet of the way was set apart as a sidewalk for the use of pedestrians. Nor does it matter that persons had not been interfered with in driving over the sidewalk at this point, when the traveled way was muddy. It does not appear that they had been invited to do so by the city authorities, nor does it appear that this condition existed so as to excuse appellant for driving on the sidewalk at the time of the accident. Under the principles of law stated, it is clear that in no aspect in which the evidence can be viewed was appellee liable.

We have not considered the question as to the obligation of the city to keep its streets safe not only for ordinary vehicles, but for automobiles (Doherty v. Ayer, 197 Mass. 241, 83 N. E. 677, 14 L. R. A. [N. S.] 816, 125 Am. St. Rep. 355, and cases cited in note), but have conceded appellant's right in this particular, as it was not necessary to decide the question. Nor have we considered the question of appellant's contributory negligence, conceding, for the purpose of this decision, that he was not chargeable with negligence. If the court and jury have arrived at the right place, there is small profit and less sense in turning them back because they may have sometimes strayed from the beaten path in reaching it, and this, we take it, is what the late rule of the Supreme Court in its essence means. We conclude that the judgment should be affirmed, and it is so ordered

Affirmed.