# CRIMINAL COURT OF BALTIMORE CITY.

Filed February 7, 1916.

STATE OF MARYLAND
VS.
WILLIAM A. DICKEY.

*Lindsay C. Spencer* for State of Maryland.

*Osborne I. Yellott* for traverser.

SOPER, C. J.—

The indictment in this case charges that the defendant unlawfully placed an automobile on one of the streets of Baltimore City and permitted it to remain there for a longer period than two hours, the automobile not being in direct and absolute use at the time. The indictment is based upon the ordinance of the Mayor and City Council codified as Section 22 of Article 8 of the Baltimore City Code of 1893. This section is as follows:

"Excepting within the limits of the several markets, and in accordance with the article entitled 'Markets,' no person whatever shall place any wagon, cart or other vehicle licensed by the city, or owned in the City of Baltimore, or any horse, mare or gelding belonging to the same, on any of the streets, lanes or alleys of the city, when not in direct and absolute use at the time, to remain there for a longer time than two hours, under a penalty of $3 for each and every offense; and all carriages, wagons, carts, drays and other vehicles upon their stands by authority of the Mayor of the city shall be considered as in use under this section."

The validity of this ordinance is assailed by the pleadings. It is conceded that under the provisions of Section 6 Subsection 26g, of the Baltimore City Code (1906 Edition) the Mayor and City Council have full power and authority to regulate the use of the streets and to prevent encroachment thereon and obstruction of the same; but it is claimed, first, that the ordinance is not applicable to automobiles, and, second, that the ordinance is void because, as applied to automobiles, it is an unreasonable exercise of the power vested in the city. Since I have reached the conclusion that the ordinance in question is not applicable to automobiles, it is not necessary to consider its reasonableness.

The ordinance is found originally as Section 20 of No. 32 Revised Ordinances of 1858. The title of the ordinance was as follows: "An ordinance to regulate the riding and driving of horses and carriages, and to regulate boats and scows in the City of Baltimore, and to provide for licensing the same."

It will be noted that the ordinance provided that no person shall place

any vehicle or any horse, mare or gelding belonging to the same, on any street of the city for a period of more than two hours.

It is, therefore, apparent not only from the title, but also from the provisions of the body of the ordinance, that it was intended to apply to wagons, carts and other horse-drawn vehicles. Automobiles were, of course, not contemplated by the City Council, as they were unknown in 1858, nor were they in use in 1893, when the ordinance was recodified in the City Code of that date. The question is whether the word "vehicle" in the ordinance is sufficiently broad to cover not only horse-drawn vehicles contemplated at the time of the passage of the ordinance, but also vehicles of different kinds which might be invented and put into use at any subsequent period.

It may be noted that vehicles owned in Baltimore City may not be placed on the street for more than two hours, while vehicles owned outside of the city limits may remain upon the streets indefinitely so far as the provisions of this ordinance are concerned. Whatever may have been the purpose of this distinction at the time that the ordinance was passed, no reason for its application to present conditions has been suggested.

The ordinance defines a misdemeanor and prescribes a penalty. It creates a criminal offense, and, therefore, in accordance with the well-established rule, must be strictly construed. The applicability of the ordinance to automobiles is certainly not free from doubt, and this doubt must be resolved against the ordinance and in favor of the defendant.

The authorities upon the subject are conflicting, although the weight of authority seems to be against the proposition that automobiles are included within the general term "vehicles" in penal statutes passed before automobiles were known. In Commonwealth vs. Golden, 205 Mass. 400, the defendant was indicted under a statute making it an offense punishable by a fine or imprisonment to refuse to pay for the use of a horse or a carriage the lawful fare established therefor with the intent to cheat the owner. The facts were that the defendant, with fraudulent intent, refused to pay for the use of an automobile the lawful fare, and was convicted; but the Supreme Court of Massachusetts determined that automobiles were not included in the statute, on the ground that when the legislation was enacted the legislature had no thought of such a vehicle as the automobile, and that the statute being a criminal statute, should be strictly construed in favor of the defendant.

So, in Doherty vs. Ayer, 197 Mass. 241, it was held that the provision of a statute requiring public ways to be kept reasonably safe for the passage of travelers "with their horses, teams and carriages," did not require the maintenance of the roads so as to be fit for the passage of automobiles.

In Transportation Co. vs. District of Columbia, 19 App. D. C. 462, the defendant was charged with neglecting to secure a license for a vehicle for the conveyance of passengers for hire, contrary to the provisions of a law which provided that the proprietors of "hacks, cabs, omnibuses and other vehicles for the transportation of passengrs for hire" should pay an annual license tax. The question was whether the law embraced certain electric omnibuses or coaches. It was decided that they were not so embraced. Chief Justice Alvey, speaking for the Court, said that if automobiles had been known and in use at the time of the passage of the act there would have been good ground for assuming the applicability of the terms of the act to them; but they were unknown to the legislative assembly at the time of the passage of the act as vehicles for the transportation of passengers. The term "other vehicles" was intended manifestly to embrace only such other vehicles as were *ejusdem generis*. It was not intended to embrace every conceivable vehicle that might thereafter be brought into use.

"All the authorities agree in maintaining that all charges upon the citizen must be imposed by clear and unambiguous language; because, as it is said, they operate as penalties. In case of doubt, that construction most beneficial to the citizen must be adopted." See also Parker vs. Scout, 127 S. W. R. 881 (Texas).

On the contrary, reference may be made to the cases of Gassenheimer vs. District of Columbia, 26 App. D. C. 557, where it was held that an automobile came within the terms of a regulation

prohibiting public vehicles seeking employment from loitering upon public streets except at the regular public stands. The date of the passage of the regulation in question is not given, nor is reference made to the case of Transportation Co. vs. District of Columbia, supra.

See also Trenton vs. Toman, 70 Atl. Rep. 606 (N. J.), where it was held that a right of way granted as a "carriage way" gave an easement for the use of automobiles; Estate vs. Dunklee, 76 N. H. 439, where it was held that a city ordinance requiring the licensing of any coach, cab or other vehicle for the conveyance of passengers for hire, is applicable to motor vehicles, although enacted prior to their advent.

All of these decisions cannot be reconciled; but the weight of authority in penal cases seems to be against the inclusion of automobiles within the terms "vehicles;" and, in any event, this interpretation is more in accord with the settled rules of construction applicable to penal statutes.

The demurrer to the indictment in the case at bar will be sustained.