MAURICE A. DUFFY & others *vs.* TREASURER AND RECEIVER GENERAL.

ERNEST B. DANE *vs.* SAME.

Suffolk.      October 22, 1919.—November 12, 1919.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Constitutional Law,* Taxation, Distribution of income tax, Equal protection of laws, Due process of law.      *Tax,* On income.

No limitation in the Constitution, either before or after the Forty-fourth Amendment, prevents the General Court from committing to a State officer or officers appointed by the Governor, rather than to the assessors and collectors of taxes of the several towns and cities, the levy and collection of the income tax.

The power to tax, being a sovereign power, is an attribute of the Commonwealth and towns and cities have no inherent power to levy taxes, but can exercise only those powers to tax which are delegated to them by the Commonwealth.

The income tax, levied and collected under the provisions of St. 1916, c. 269, and statutes in amendment thereof, pursuant to the power given by the Forty-fourth Amendment to the Constitution, is a State tax, assessed equally upon all inhabitants of the Commonwealth in proportion to their respective incomes from the designated sources, and levied and collected by State officers.

The design of St. 1919, c. 314, providing for the distribution among the several cities, towns and taxing districts of the Commonwealth of the amounts collected as an income tax, is that the distribution shall be made in ratio to the valuation of all the property remaining subject to taxation in the several cities, towns and taxing districts.

The basis provided by St. 1919, c. 314, of distribution of the income tax among the several cities, towns and taxing districts, while it is different from that on which the collection of that tax is made, is one recognized by law and practice as just for the levying of the State tax, and is not irrational, whimsical or arbitrary.

Money distributed to the several cities and towns and taxing districts of the Commonwealth as the portion of the income tax to which they are entitled under St. 1919, c. 314, can be disbursed by them only for public uses and not in any sense for the private advantage of individuals.

The town system of government, recognized and preserved by the Constitution, is not transcended by the provisions of St. 1919, c. 314.

The provisions of St. 1919, c. 314, do not violate the general principle of the law of taxation that the people of one district cannot be taxed for the benefit of another district.

The distribution of the income tax under the provisions of St. 1919, c. 314, although not in proportion to the amounts collected from the several municipalities, is a means of apportioning the ultimate burdens of the support of government.

The Legislature is not confined to a single method in apportioning public expenses or raising the money to defray them.

St. 1919, c. 314, is not intended to be an instrument to narrow or circumvent the constitutional requirement for proportional taxes upon all property other than incomes.

Such inequalities as result from the operation of St. 1919, c. 314, do not render it unconstitutional.

St. 1919, c. 314, is not in contravention of the provisions of the Constitution of the Commonwealth requiring proportional taxation and prohibiting the payment of money from the treasury of the Commonwealth except "for the necessary defence and support of the Commonwealth; and for the protection and preservation of the inhabitants thereof," contained in art. 4 and art. 11 of c. 2, § 1.

St. 1919, c. 314, is not in violation of the guaranties, contained in the Fourteenth Amendment to the Constitution of the United States, of equal protection of the laws and against being deprived of property without due process of law.

PETITION, filed in the Supreme Judicial Court on October 16, 1919, by three taxable inhabitants, who also were the selectmen, of the town of Milton, for a writ of mandamus commanding the Treasurer and Receiver General "(1) to desist and refrain from distributing any moneys in accordance with the provisions of St. 1919, c. 314; (2) to desist and refrain from distributing any moneys in accordance with the provisions of St. 1918, c. 219; and (3) that the Treasurer and Receiver General be commanded (unless and until the General Court shall otherwise lawfully provide) to make distribution of the net distributable proceeds of the taxes coming into his hands under the provisions of St. 1916, c. 269, to and among the several cities and towns of the Commonwealth in the proportions in which the said taxes were paid and contributed by the inhabitants of said several municipalities, respectively;" also a

PETITION, filed in the Supreme Judicial Court on October 16, 1919, by a taxable inhabitant of the town of Brookline, for a writ of mandamus commanding the Treasurer and Receiver General "not to distribute or pay over any portion of the tax for the year 1919 raised under the provisions of St. 1916, c. 269, from the

petitioner or from any other inhabitant of the town of Brookline to any other city or town until the further order of the court."

The respondent filed a demurrer in each case. The cases came on to be heard before *Pierce*, J., upon the petitions and demurrers, and, being of the opinion that the questions raised by the demurrer in each case so affected the merits of the controversy that, before further proceedings, the matters ought to be determined by this court, the single justice reported each case for determination by this court, the case to stand for hearing upon the merits if the demurrer was overruled and, if the demurrer was sustained, the petition to be dismissed unless the petitioner should desire to amend it, if it could be amended so as to be maintained.

Article 44 of the Amendments to the Constitution reads as follows:

"Full power and authority are hereby given and granted to the General Court to impose and levy a tax on income in the manner hereinafter provided. Such tax may be at different rates upon income derived from different classes of property, but shall be levied at a uniform rate throughout the Commonwealth upon incomes derived from the same class of property. The General Court may tax income not derived from property at a lower rate than income derived from property, and may grant reasonable exemptions and abatements. Any class of property the income from which is taxed under the provisions of this article may be exempted from the imposition and levying of proportional and reasonable assessments, rates and taxes, as at present authorized by the Constitution. This article shall not be construed to limit the power of the General Court to impose and levy reasonable duties and excises."

St. 1918, c. 219, is as follows:

"On or before the fifteenth day of November in the year nineteen hundred and nineteen the Treasurer and Receiver General shall pay to each city or town, and to each fire, water, improvement, light and watch district having the power of taxation, an amount equal to the difference between the average amount of the tax levied upon personal property in such city, town or district in the years nineteen hundred and fifteen and nineteen hundred and sixteen and the average amount, computed by the Tax Commissioner, of the tax upon the personal property actually

assessed in such city, town or district for the years nineteen hundred and seventeen and nineteen hundred and eighteen. If the amount of taxes collected from incomes shall exceed the sum necessary to make the said payments, the balance shall be distributed among the several cities and towns in proportion to the amount of the State tax imposed upon each of them in the year nineteen hundred and nineteen: provided, that of the aforesaid excess the Commonwealth shall retain a sum sufficient to reimburse it for the expenses incurred under chapter two hundred and sixty-nine of the General Acts of nineteen hundred and sixteen and amendments thereof during the year nineteen hundred and nineteen, and abated taxes repaid thereunder during that year. In years subsequent to nineteen hundred and nineteen, the taxes collected under the provisions of said chapter two hundred and sixty-nine and amendments thereof shall be distributed as the General Court may determine."

St. 1919, c. 314, is as follows:

"Section 1. The taxes collected by the Commonwealth upon incomes under the provisions of chapter two hundred and sixty-nine of the General Acts of nineteen hundred and sixteen, and acts in amendment thereof, shall, on or before the fifteenth day of November in each year, be distributed among and paid to the several cities, towns and districts by the Treasurer and Receiver General in the manner following, namely, — to each city, town and district such proportion of an amount equal to the difference between the average amount of the tax levied upon personal property in such city, town or district in the years nineteen hundred and fifteen and nineteen hundred and sixteen, and the average amount, computed by the Tax Commissioner, that would be produced by a tax upon the personal property actually assessed in each city, town or district for the years nineteen hundred and seventeen and nineteen hundred and eighteen at an average of the same rates of taxation as prevailed therein in the years nineteen hundred and fifteen and nineteen hundred and sixteen, as is ninety per cent thereof for the year nineteen hundred and nineteen, as is eighty per cent thereof for the year nineteen hundred and twenty, as is seventy per cent thereof for the year nineteen hundred and twenty-one, as is sixty per cent thereof for the year nineteen hundred and twenty-two, as is fifty per cent

thereof for the year nineteen hundred and twenty-three, as is forty per cent thereof for the year nineteen hundred and twenty-four, as is thirty per cent thereof for the year nineteen hundred and twenty-five, as is twenty per cent thereof for the year nineteen hundred and twenty-six, as is ten per cent thereof for the year nineteen hundred and twenty-seven; and in the year nineteen hundred and twenty-eight and thereafter all the taxes so collected shall be distributed and paid to the several cities and towns in proportion to the amount of the State tax imposed upon each of them in each year.

"Section 2.  The amount so collected in any year in excess of the sum necessary to make the said payments shall be distributed in proportion to the amount of the State tax imposed upon each city and town in that year: provided, that of the amount so collected the Commonwealth shall first retain a sum sufficient to reimburse it for the expenses incurred in the collection and distribution of said tax and for abated taxes repaid under said act during each year.

"Section 3.  Chapter two hundred and nineteen of the General Acts of nineteen hundred and eighteen is hereby repealed.

"Section 4.  This act shall be subject to the provisions of any law enacted by the General Court during the year nineteen hundred and nineteen disposing of the proceeds of taxes collected by the Commonwealth upon incomes under the provisions of said chapter two hundred and sixty-nine.

"Section 5.  In respect to their constitutional validity, all the provisions of this act are hereby declared to be inseparable."

*F. Rackemann,* for the petitioners in the first case.

*P. Nichols,* (*R. A. Stewart* with him,) for the petitioner in the second case.

*W. H. Hitchcock,* Assistant Attorney General, for the respondent.

Rugg, C. J.  The primary object of these proceedings is to test the constitutionality of St. 1919, c. 314.  That act provides for the distribution among the several cities, towns and taxing districts of the income tax collected by the Commonwealth, under the provisions of St. 1916, c. 269, and acts in amendment thereof enacted pursuant to art. 44 of the Amendments to the Constitution.  By that amendment full power is granted to the General Court to levy a tax on income, to classify property in

respect of income, and to exempt from other taxation property the income of which is thus taxed. One effect of that amendment is to withdraw from the scope of the general requirement of c. 1, § 1, art. 4 of the Constitution to the effect that all property taxes be proportional, whatever is rightly made subject to the income tax. *Tax Commissioner* v. *Putnam,* 227 Mass. 522.

By St. 1916, c. 269, and acts in amendment thereof, the assessment and collection of the income tax is vested in the tax commissioner and his subordinates. These are State officers as distinguished from public officers selected by the various municipalities of the Commonwealth, hitherto under the law chiefly charged with the assessment and collection of property taxes. Incidentally attack is made upon the propriety of this method of assessing and collecting the income tax. The only point within our jurisdiction to consider is whether this method violates any provision of the Constitution. No limitation in the original Constitution, in Amendment 44, or in the other amendments, prevents the General Court from committing to a State officer or officers appointed by the Governor, rather than to the assessors and collectors of the several cities and towns, the levy and collection of the income tax. The corporation franchise tax, the foreign corporation, street railway and other excise taxes, are familiar instances of the assessment and collection of certain kinds of taxes through State rather than municipal officers. Their constitutionality in this particular is not open to doubt. The income tax law also, in this respect, is free from any constitutional weakness. The power to tax is a sovereign power. It is an attribute of the Commonwealth. Cities and towns have no inherent power to levy taxes. They can exercise only those powers to tax which have been delegated to them by the General Court as the representative of the Commonwealth. They can levy taxes only on the property and for the purposes established by the General Court acting within its constitutional limitations. Power has not been delegated by the General Court to the several municipalities to levy the income tax. It is retained as a direct incident of sovereignty. The income tax thus is a State tax. The several municipalities have been abolished as taxing districts so far as concerns intangible personal property, which by the income tax law is practically exempted from local taxation because

made to contribute what has been determined by the Legislature to be its fair share toward the support of government through the imposition of the income tax. The Commonwealth has been made a single taxing district for this purpose. The income tax is a general tax assessed equally upon all inhabitants of the Commonwealth in proportion to their respective incomes from the designated sources.

The objection mainly urged against the constitutionality of St. 1919, c. 314, relates to the method of distribution of the income tax, when collected, among the cities and towns and taxing districts of the Commonwealth. That method, summarily stated, is for the Commonwealth to pay a progressively diminishing part of the income tax during the ten years ending with 1928 to the several cities, towns and districts having power of taxation, in a proportion based on the difference between the average amount of the tax levied upon personal property in such city, town or district for 1915 and 1916 (being the last two years before the operation of the income tax law when taxes were levied in the several cities, towns and taxing districts upon all personal property, including both intangible and tangible), and the average amount as computed by the Tax Commissioner that would be produced by a tax upon the personal property actually assessed in each city, town or district for 1917 and 1918 (being the first two years when the income tax was in operation and intangible personal property was exempted from local taxation and only tangible personal property was actually assessed), at an average of the rates of taxation which prevailed in 1915 and 1916, the balance of the income tax each year in excess of that part needed to make such payments, and the entire income tax subsequent to the expiration of ten years (after reimbursing the Commonwealth in every year for the expenses incurred and abatements made in the transactions), to be paid by the Commonwealth to the several cities and towns in proportion to the amount of the State tax imposed upon each in such year.

The several statutes enacted since the income tax law went into operation have contained as a fundamental element provision for making up to the several cities, towns and taxing districts, out of the income tax collected by the Commonwealth, as near as could readily be calculated, the losses sustained by them through

the exemption from local taxation of the intangible personal property, which before the enactment of the income tax law had been subject to local taxation. The income tax, however, has yielded a revenue much larger than is required to make good these losses. The statute here assailed is an attempt on the part of the General Court to deal with the subject in a more comprehensive and permanent way than was possible before results were available from experience in the actual working of the income tax law.

The method embodied in the present statute is the assessment and collection of the income tax by State officers according to fixed principles of State wide application. Such unification of the territory of the Commonwealth in this particular obviates differences likely to arise through divergences of opinion and practice almost inevitable among local taxing and collecting officers of the several municipalities. Out of the sums thus collected as income tax the Commonwealth retains nothing for defraying distinctively State charges. It keeps only enough to reimburse itself for the expenses incurred in administering the law. The entire sum thus collected, after deducting expenses, is distributed amongst the cities, towns and taxing districts of the Commonwealth. A part of this distribution for a limited period is for the purpose of making up to them in diminishing proportion the loss in intangible personal property taxable locally occasioned by the scheme of the income tax law, and the rest is distributed in proportion to the amount of State tax assessed upon the several municipalities. The State tax is assessed now upon the several municipalities in proportion to the valuation of the real estate and of the tangible personal property in each, omitting all consideration of intangible personal property owned by the inhabitants of each. The distribution of the income tax confessedly is not made to the municipalities on the footing of the amount of income tax collected from their inhabitants. That factor is ignored. The design of the statute is that the income tax shall be collected at large throughout the Commonwealth and distributed to the municipalities in ratio to the valuation of all the property therein now made subject to taxation according to c. 1, § 1, art. 4 of the Constitution, requiring proportional and reasonable taxes.

This contravenes no provision of the Constitution. The income tax is collected from the entire population of the Commonwealth, so far as liable under the law to such taxation. The territory of the Commonwealth constitutes a single taxing district for that purpose. The distribution of the tax is made throughout the entire Commonwealth. No part is excluded from the distribution. Every city and town shares in a definite ratio. No political subdivision is selected for special discrimination or unusual favor. All are treated alike in accordance with the one uniform rule embodied in the statute. The distribution is made upon a basis different from that on which the collection is made. But it is upon a basis recognized by law and practice as just for the levying of the State tax. It hardly could be contended that the foundation upon which the State tax rests is unconstitutional because irrational, whimsical or arbitrary.

It is manifest that the uses to which the income tax can be devoted must be wholly public. Money raised by taxation can be disbursed only for public uses and not in any sense for the private advantage of individuals. The money when distributed to the several cities and towns is affected with the same public interest as when in the treasury of the Commonwealth. It can be appropriated and expended only for public purposes. *Lowell v. Boston,* 111 Mass. 454. *Wheelock* v. *Lowell,* 196 Mass. 220. *Opinion of the Justices,* 204 Mass. 607, and 211 Mass. 624. *Freeland* v. *Hastings,* 10 Allen, 570. *Salisbury Land & Improvement Co.* v. *Commonwealth,* 215 Mass. 371. *Whittaker* v. *Salem,* 216 Mass. 483. There is nothing on this record to justify the assumption that the several municipalities design to devote to other than a public use any portion of the income tax thus distributed to them. Every presumption is in favor of legality in the absence of evidence to the contrary. *Doherty* v. *Ayer,* 197 Mass. 241, 248. *Collector of Taxes of Boston* v. *Rising Sun Street Lighting Co.* 229 Mass. 494, 497. *Bank of United States* v. *Dandridge,* 12 Wheat. 64, 69, 70. *Cincinnati, New Orleans & Texas Pacific Railway* v. *Rankin,* 241 U. S. 319, 327.

The town system of government is recognized and preserved by the Constitution. *Commonwealth* v. *Plaisted,* 148 Mass. 375, 384–386. *Opinion of the Justices,* 229 Mass. 601, 607. Yet the power of the General Court over municipalities as agencies of

government is extensive. *Weymouth & Braintree Fire District v. County Commissioners,* 108 Mass. 142. *Rawson v. Spencer,* 113 Mass. 40. *Kingman, petitioner,* 153 Mass. 566, 573. That power has not been transcended in the present statute. The exemption of intangible property from local taxation, leaving only tangible personal property and real estate subject to taxation by the cities and towns, is not such an invasion of the system of town government as to violate the Constitution. A large field of taxation is still left to the municipalities, and the distribution of the income tax affords a kind of substitution for a source of revenue taken over by the Commonwealth.

It is a general principle of the law of taxation that the people of one district cannot be taxed for the benefit of another district. *Hampshire v. Franklin,* 16 Mass. 76. *Norwich v. County Commissioners,* 13 Pick. 60. *Dorgan v. Boston,* 12 Allen, 223, 235–237. *Thomas v. Gay,* 169 U. S. 264. *Beach v. Bradstreet,* 85 Conn. 344, 357. That principle is not violated by the statute here in question, because the State is the taxing district and the distribution is to all the municipalities in the State, although the basis of collection and distribution is not the same. The application of this principle is familiar in other connections. The Commonwealth has been made a single district for the care of the insane and for the construction and maintenance of State roads, public objects the control of which formerly was vested wholly or partly in the several municipalities. There is a strong similitude in the establishment and administration of the Massachusetts school fund. See St. 1834, c. 169; R. L. c. 41. The expenditures made by the Commonwealth for these public objects in immediate benefit to the several cities and towns bear no direct relation to the contributions made by them to the public revenue.

The income tax law must be considered as a part of and in relation to the entire scheme of taxation established by the law. It does not stand alone as a mere collection of one kind of tax for redistribution on a different basis. The distribution of the income tax, although not in proportion to the amounts collected from the several municipalities, is a means of apportioning the ultimate burdens of the support of government. The Legislature is not confined to a single method in apportioning public expenses or raising the money to defray them. Provision was made by St.

1837, c. 85, for the distribution of certain public moneys among the several cities and towns according to population. Although that statute was before this court several times, it never was intimated that it was unconstitutional in that particular. *Simmons* v. *Hanover*, 23 Pick. 188. *Cooley* v. *Granville*, 10 Cush. 56. *Pope* v. *Halifax*, 12 Cush. 410. Apportionments of the expenses of the Metropolitan sewer system and of the Metropolitan park system have been made according to valuation of the several municipalities in the districts, and according to percentages made up of a combination of valuation and population, and again according to a classification expressly framed to make richer towns bear a proportionately larger share of the burden than poorer towns. All these methods have been held not unconstitutional. *In re Metropolitan Park Commissioners, petitioners,* 209 Mass. 381, and cases collected at page 384. In these instances the element of special benefits conferred by particular public works was present, which is absent in a scheme for general taxation. That element, however, was not made the exclusive determining factor in the apportionment of expenses. These cases are illustrative of the broad considerations pertinent to the equalization of the burdens of taxation under the Constitution.

The case at bar is indistinguishable in principle from *Lowell* v. *Oliver*, 8 Allen, 247, where a statute was upheld by which a general tax was levied to be distributed among the several cities and towns in reimbursement of bounties paid to volunteers in the Civil War. Such distribution was not in proportion either to valuation, to population, or to the amount of tax collected from the several towns. Imposition of expense of armories for the use of militia upon the municipalities where located is upheld, although the maintenance of the militia is manifestly an expense of the Commonwealth for the protection of its sovereignty. *Hodgdon* v. *Haverhill*, 193 Mass. 406. See *Stetson* v. *Kempton*, 13 Mass. 272.

It scarcely need be said that the adoption of Amendment 44 to the Constitution, except to the extent therein expressly stated, has not abrogated the restriction upon the power of the General Court contained in c. 1, § 1, art. 4 of the Constitution to impose and levy only "proportional and reasonable assessments, rates and taxes, upon all the inhabitants of, and persons resident, and estates lying, within the" Commonwealth. The power to levy

an income tax cannot be employed either openly or covertly as an instrument to narrow or circumvent the requirement for proportional taxes upon all property other than incomes. The present statute bears no indication of such a purpose.

Some inequalities in the effect of the operation of the statute have been pointed out in argument. No system of taxation yet has been devised which attains the ideal of apportioning the public expenses among taxpayers in exact accordance with ability to pay. Benefits conferred by government upon individuals or territorial subdivisions cannot be adjusted with precise equality in relation to the amounts exacted in way of taxation and the resources to meet such exactions. The present statute was passed pursuant to a purpose to equalize the burdens of taxation throughout the Commonwealth. It was enacted in substantial accordance with the recommendation of a joint special committee of the General Court of 1918, presented after careful study and investigation to the General Court of 1919. Its apparent aim was to apportion the entire burden of taxation so that it would be more nearly equal than hitherto. The inequalities to which attention has been called in argument appear to be no more than may be encountered in a rationally devised system of taxation.

The present statute is a departure in important particulars from any tax law which has hitherto been enacted in this Commonwealth. It seems to go almost to the verge of constitutional power. The clauses of the Constitution chiefly relied upon as preventing its validity are those requiring proportional taxation, c. 1, § 1, art. 4, and prohibiting the payment of money from the treasury of the Commonwealth except "for the necessary defence and support of the Commonwealth; and for the protection and preservation of the inhabitants thereof," c. 2, § 1, art. 11. For the reasons already stated and for those elaborated in *Kingman, petitioner,* 153 Mass. 566, the present statute cannot be said to be obnoxious to these or other provisions of our fundamental law.

It has been argued that the statute contravenes the guaranty of equal protection of the laws and that against being deprived of property without due process of law contained in the Fourteenth Amendment to the United States Constitution. Of course, the provisions of that amendment are the law of the land and the exposition of their meaning by the Supreme Court of the United

States is of binding force. We are unable to perceive anything in the present statute which violates those provisions. The income tax is levied by the State equally upon all made subject to the tax, according to valid classifications, for public purposes, and can be expended only for those purposes. Attention was called in argument to the decisions in *Thomas* v. *Gay,* 169 U. S. 264, 276, and *Cole* v. *La Grange,* 113 U. S. 1. No discussion seems to us to be required to demonstrate that the principles declared and applied in those decisions do not invalidate the present statute. While it was held in those decisions that taxes could be levied only for public purposes and expended only for public objects, and that the duty and obligation to pay taxes is founded on participation in benefits arising from the promotion of the public welfare, it also was recognized that in the practical administration of these principles it was not necessary that a specific personal advantage be pointed out as accruing to each taxpayer or taxpaying district. It is enough if some general plan be followed which is not discriminatory, arbitrary or fanciful in its operation, and which confines expenditures to public purposes.

All the arguments advanced in behalf of the petitioners have been carefully considered, but it is not necessary to discuss them in further detail.

In each case let the entry be '

*Petition dismissed.*